**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| Kaitlyn M., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 3:21-cv-50322 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant.* | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Kaitlyn M. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her application for a period of disability and disability insurance benefits.[1] For the reasons set forth below, the Commissioner's decision is affirmed.

### I. Background

Plaintiff suffers from Charcot-Marie-Tooth disease (CMT), a hereditary motor and sensory neuropathy that affects the peripheral nervous system.[2] R. 16. This rare disease causes numbness, weakness, and pain in Plaintiff's lower extremities, as well as deformities in her feet, making it difficult for her to walk and stand for long periods of time. R. 18–20. Plaintiff is also legally blind in her right eye. R. 19.

Plaintiff filed an application for a period of disability and disability insurance benefits on January 19, 2019, alleging a disability onset date of September 16, 2018. R. 56–57. A remote

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 6.
[2] CMT is also called peroneal muscular atrophy because it particularly affects the peroneal muscles of the leg. *Stedman's Medical Dictionary* 179 (28th ed. 2006). CMT is named for the three neurologists who first described it. *See id.* at 355, 1157, 1999.

hearing on the application was held before an Administrative Law Judge (ALJ) on November 23, 2020. R. 13.

The ALJ issued a written decision on February 2, 2021, finding that Plaintiff was not disabled under the applicable sections of the Social Security Act and thus not entitled to benefits. R. 22. At step two of the inquiry, the ALJ found that Plaintiff had the severe impairments of right-eye blindness and CMT, along with its associated symptoms. R. 15. At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. R. 16–17. The ALJ then concluded that Plaintiff had the residual functional capacity (RFC)

> to perform sedentary work as defined in 20 CFR 404.1567(a) except never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; is not able to perform tasks requiring depth perception, such as threading a needle, but is able to avoid ordinary hazards, such as doors ajar and boxes on the floor; is never able to operate hazardous machinery or commercial vehicles; and can never be around unprotected heights.

R. 17. Based on hearing testimony from an independent vocational expert, the ALJ found that Plaintiff could not return to her past relevant work as an automotive service manager. R. 21, 48–50. However, the ALJ concluded that a significant number of jobs existed in the national economy that Plaintiff could perform, such as order clerk, touchup screener, and assembler. R. 21–22.

After the Appeals Council denied Plaintiff's request for review on June 25, 2021, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Legal Standard

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison*

*Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

### III. Discussion

Plaintiff argues that the ALJ: (1) erred in evaluating Plaintiff's subjective symptoms, (2) should have called a medical expert to testify about Plaintiff's CMT, and (3) performed an inadequate listing analysis at step three.

### A. Subjective Symptoms Analysis

Plaintiff argues that the ALJ erred in evaluating her subjective symptoms.[3] Specifically, she says that "[a]t no point does the ALJ actually state why she finds Claimant to not be credible. She does perform a recitation of the medical facts and testimony – albeit without much citation – but she never explains why or how she reached her conclusions." Pl's Mot. at 2, Dkt. 15. The Court disagrees. In evaluating subjective symptoms, ALJs consider a range of factors, including objective medical evidence, daily activities, the location, duration, frequency and intensity of pain or other symptoms, aggravating factors, medications, and treatment. SSR 16-3p, 2017 WL 5180304, at *6. An ALJ must justify her evaluation of a plaintiff's subjective allegations with "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

---

[3] Plaintiff repeatedly refers to "credibility" and cites SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996). As the Commissioner points out, SSR 96-7p has been superseded, and the Social Security Administration no longer uses the term "credibility." SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017).

"[T]he administrative law judge, and not the court, is in the best position to observe the claimant's testimony." *Rogers v. Colvin*, 37 F. Supp. 3d 987, 1000 (N.D. Ill. 2014). Accordingly, an ALJ's subjective symptoms evaluation should not be overturned "unless it is 'patently wrong.'" *Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020) (unpublished) (quoting *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012)). An ALJ's subjective symptoms evaluation is patently wrong only when it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008).

Here, the ALJ summarized Plaintiff's testimony concerning the pain and limiting effects she claimed as a result of her impairments, including that Plaintiff experienced worsening neuropathic symptoms since the birth of her first child. R. 19. As the ALJ explained,

> [Plaintiff] experiences tingling and burning from her lower back, to her hips and to her feet. . . . Her hands lock into place and stiffen, sometimes. . . . [H]er feet go numb and her reaction time walking is delayed. . . . She estimated that she could walk for 10 minutes, then has to stop. She said that she trips 30–40 times per day due to problems with her feet, but does not fall completely to the ground. Some days she can sit for 30 minutes. But if she did a lot of cleaning that day, she can only sit for 10 minutes and needs to shift. She estimated that she could lift 35 pounds.

R. 18. In evaluating Plaintiff's subjective symptoms, the ALJ properly considered the regulatory factors. She cited to Plaintiff's role as primary caregiver for her two infant children and her daily activities such as cooking and cleaning and noted that these activities are inconsistent with the severity of symptoms that Plaintiff alleged. R. 19. The ALJ also noted that physical examinations showed normal range of motion, strength, fine and gross manipulation, and gait, as well as "grossly normal" X-rays of her feet. R. 19. Thus, contrary to Plaintiff's assertion, the ALJ did provide an explanation for determining that Plaintiff's symptoms were not as severe as she alleged.[4]

---

[4] Plaintiff argues only that the ALJ provided *no* explanation for the subjective symptoms analysis; she does not argue that the reasons given are improper or unsupported by the record. Pl's Mot. at 2, Dkt. 15. Any argument regarding the propriety of the reasons has thus been waived. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (perfunctory and undeveloped arguments are waived).

Moreover, while the ALJ pointed to factors that supported the conclusion that Plaintiff's symptoms were not as severe as she alleged, the ALJ did not discount Plaintiff's symptoms altogether. To the contrary, the ALJ considered Plaintiff's pain and restrictions in daily activities when she limited Plaintiff to a restricted range of sedentary work with additional functional limitations. R. 17–19; *see Schmidt v. Astrue*, 496 F.3d 833, 844 (7th Cir. 2007) ("[T]he ALJ did not totally discount [the plaintiff's] testimony regarding how her pain affected her ability to perform certain activities, as evinced by the ALJ's decision to limit [the plaintiff's] range of work to sedentary when assessing her residual functional capacity."); *see also Jolene C. v. Saul*, No. 20 CV 50219, 2021 WL 2156426, at *9 (N.D. Ill. May 27, 2021); *Taylor v. Berryhill*, No. 17 C 9098, 2018 WL 5249234, at *7 (N.D. Ill. Oct. 22, 2018); *Spaulding v. Berryhill*, No. 16-CV-6298, 2017 WL 3922878, at *11 (N.D. Ill. Sept. 7, 2017).

Finally, the ALJ noted that "[t]here are no medical opinions stating that the claimant is more limited than the residual functional capacity herein." R. 20. The Seventh Circuit has held that "[t]here is no error" in an RFC determination when, as here, "no doctor's opinion contained in the record indicated greater limitations than those found by the ALJ." *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) (unpublished) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)); *see Hosea M. v. Saul*, No. 18 CV 2926, 2019 WL 5682835, at *7 (N.D. Ill. Nov. 1, 2019) (collecting cases), *aff'd*, 833 F. App'x 432 (7th Cir. 2020) (unpublished). For all the above reasons, the ALJ's subjective symptoms evaluation was not patently wrong.

## B. Medical Expert Testimony

Plaintiff argues that the ALJ should have "call[ed] a medical expert to testify as to the severity and impact of [Plaintiff's] condition on her RFC." Pl's Mot. at 5, Dkt. 15. Plaintiff concludes, "[w]ithout a medical expert to testify as to [Plaintiff's] physical limitations, the ALJ

could only reach these conclusions by 'playing doctor.'" *Id.* at 6. In support of her argument, Plaintiff cites *Moon v. Colvin*, 763 F.3d 718 (7th Cir. 2014), *as amended on denial of reh'g* (Oct. 24, 2014). Pl's Mot. at 5–6, Dkt. 15. In *Moon*, the ALJ interpreted an MRI as "unremarkable." 763 F.3d at 722. The Seventh Circuit noted that "[t]his mistaken reading of the evidence illustrates why ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Id.*; *see* Pl's Mot. at 5–6, Dkt. 15.

Here, however, Plaintiff does not point to any medical evidence that the ALJ interpreted without medical scrutiny. Plaintiff's own brief acknowledges that the ALJ relied on medical evidence in the record in formulating her RFC, specifically "the opinions of [Plaintiff's] doctors, the consultative examiners, and her doctors' treating notes." Pl's Mot. at 5, Dkt. 15. Plaintiff's sole contention is that expert testimony was required because CMT "is extremely rare and can present as a variety of symptoms worsening over time." *Id.* Although CMT is indeed rare, a diagnosis alone does not establish disability. *Mitchel A. v. Saul*, No. 19 CV 1757, 2020 WL 2324425, at *6 (N.D. Ill. May 11, 2020). Moreover, the decision to retain a medical expert at the administrative hearing is largely within the ALJ's discretion. *See* 20 C.F.R. § 404.1513a(b)(2); *Jirau v. Astrue*, 715 F. Supp. 2d 814, 826 (N.D. Ill. 2010) (calling medical expert is discretionary "[u]nless required to develop an inadequate record or resolve ambiguities"); *Jesus P. v. Saul*, No. 19 C 2271, 2020 WL 3268515, at *10 (N.D. Ill. June 17, 2020) (reviewing decision not to call expert for abuse of discretion). Plaintiff does not point to any ambiguities or otherwise argue that the record was inadequate, so she provides no grounds for remand.

Finally, the Court notes that Plaintiff has been represented by the same attorney since the hearing and "never suggested at the administrative level that the ALJ should retain a medical expert." *Jesus P.*, 2020 WL 3268515, at *10. Because Plaintiff had the assistance of counsel at the

6

hearing and did not supply the medical evidence she now claims was lacking, this argument "necessarily fails." *Matthew F. v. Kijakazi*, No. 20 C 1830, 2022 WL 79867, at \*3 (N.D. Ill. Jan. 7, 2022); *Mang v. Sullivan*, 811 F. Supp. 374, 376 (N.D. Ill. 1993) (finding such forfeiture even though claimant's condition was extremely rare), *aff'd mem.*, 16 F.3d 1225 (7th Cir. 1994).

## C. Listing Analysis

For her final point, Plaintiff argues that the ALJ failed to adequately analyze whether her CMT meets or equals the criteria of Listings 1.02, 11.14, and 11.17.[5] A claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the listing of impairments. 20 C.F.R. § 404.1520(d). The listings specify the criteria for impairments that are considered presumptively disabling. *Id.* § 404.1525(a). A claimant may also demonstrate presumptive disability by showing that her impairments are accompanied by symptoms that are equal in severity to those described in a specific listing. *Id.* § 404.1526(a). Plaintiff has "the burden of showing that [her] impairments meet a listing, and [she] must show that [her] impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). However, the Seventh Circuit has clarified that courts must "review[] an ALJ's step-three determination in light of elaboration and analysis appearing elsewhere in the decision." *Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021).

Listings 11.14 and 11.17 apply to nervous system disorders like CMT. A claimant is presumptively disabled under these listings if she has (A) "an extreme limitation in the ability to

---

[5] Plaintiff does not challenge the ALJ's finding regarding Listing 2.00. R. 17.

stand up from a seated position, balance while standing or walking, or use the upper extremities"
or (B) a "marked limitation in physical functioning" and a marked limitation in one of four areas
of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.14, 11.17 (citations omitted). The
ALJ found that Plaintiff "ha[d] not exhibited that kind of 'extreme' limitation of function" and
"[wa]s not 'markedly' limited in any of the above areas." R. 16. The ALJ also found that Plaintiff
was not presumptively disabled under Listing 1.02, relating to major joint dysfunction, because
Plaintiff did not satisfy the stringent criteria for loss of function.[6] R. 16–17. In reaching her
conclusions, the ALJ explicitly referred to "the discussion of the evidence throughout this
decision." R. 16.

The Commissioner argues that Plaintiff's challenge to the ALJ's listing analysis falters at
the outset because she fails to cite any evidence in the record to show that she satisfies the criteria
of a listing. Def.'s Resp. at 7–8, Dkt. 18. The Commissioner is correct that nowhere in Plaintiff's
brief does she address how she meets or medically equals any of the requirements of the applicable
listings. It is not the Court's job to find record evidence to support this claim. *Vincent A. v.
Berryhill*, No. 16 C 7136, 2019 WL 2085104, at *12 (N.D. Ill. May 13, 2019) (quoting *Howard v.
Inland SBA Mgmt. Corp.*, 32 F. Supp. 3d 941, 948 (N.D. Ill. 2014)). In addition, the Commissioner
cites to the ALJ's numerous findings throughout the decision that support her conclusion that
Plaintiff did not meet or medically equal a listing. Def.'s Resp. at 5–6, 8–10; *see Jeske v. Saul*, 955
F.3d 583, 590 (7th Cir. 2020) (ALJ's findings can "doubly explain" conclusions elsewhere in
decision). In her reply brief, Plaintiff does not respond to either of the above arguments.[7] Because

---

[6] Listing 1.02 has been superseded since the ALJ's decision in this case. *Revised Medical Criteria for
Evaluating Musculoskeletal Disorders*, 85 Fed. Reg. 78,164 (Dec. 3, 2020).

[7] In fact, Plaintiff's reply brief seems to have been copied verbatim from a different brief raising different
arguments in a different case. *Compare* Plaintiff's Motion for Summary Judgment at 9–10, *Caren C. v.
Kijakazi*, No. 3:21-cv-50323 (N.D. Ill. Jan. 14, 2022), Dkt. 10, *with* Pl.'s Reply. at 1–2, Dkt. 23 (using
Caren C.'s surname in this case).

Plaintiff does not refer to the ALJ's listing analysis at all in her reply brief, this argument has been waived. *See, e.g.*, *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Cynthia T. v. Saul*, No. 18 CV 50288, 2020 WL 564223, at *7 (N.D. Ill. Feb. 5, 2020); *Corey Z. v. Saul*, No. 18 CV 50219, 2019 WL 6327427, at *8 (N.D. Ill. Nov. 26, 2019).

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, the Commissioner's motion is granted, and the ALJ's decision is affirmed.

Date: September 15, 2022          By:

Lisa A. Jensen
United States Magistrate Judge